<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HERRILL, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-3575 |
| | : | |
| v. | : | OPINION |
| | : | |
| RICCI, et al., | : | |
| | : | |
| Defendants. | : | |

**SALAS, DISTRICT JUDGE**

Pending before this Court is Petitioner Rahman J. Herrill's ("Petitioner"), petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, presently confined at the New Jersey State Prison in Trenton, New Jersey, challenges his New Jersey state court Judgment of Conviction entered against him on March 22, 2002. For the reasons below, the Petition is denied for lack of substantive merit.

## I. BACKGROUND

### A. Procedural History

On July 14, 2000, an Essex County grand jury indicted Petitioner on the following charges: (Count One) murder in the first degree, in violation of N.J.S.A. 2C:11-3a(1) and (2); (Count Two) third degree terroristic threats, in violation of N.J.S.A. 2C:12-3a; (Count Three) third degree hindering apprehension or prosecution, in violation of N.J.S.A. 2C:29-3b(2) and (3); (Count Four) second degree tampering with a witness, in violation of N.J.S.A. 2C:28-5a; (Count Five) third degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5b; and (Count Six) third

degree possession of a handgun for an unlawful purpose in violation of N.J.S.A. 2C:39-4a.  (Ra1,[1] Indictment No. 2000-7-1817, Jul. 14, 2000).  Counts Two and Four were dismissed before trial. (Ex. 3, 2T 10:1-15, Nov. 13, 2001).

A trial was held before a jury and the Honorable Joseph C. Cassini, III, J.S.C., from November 9 through December 4, 2001.  On December 4, 2001, the jury convicted Petitioner of murder and the two weapons offenses (Counts One, Five, and Six), and acquitted Petitioner of the charge of hindering apprehension (Count Three).  (Ex. 13, 2:11-3:8; Ex. 15, J. of Conviction, Mar.

---

[1]   "Ex." and "Ra" refer to the Respondents' appendix of exhibits that comprises the relevant state court record in this matter.  The exhibits are identified as follows:
1) Indictment No. 2000-7-1817
2) Trial transcript of November 9, 2001 (1T)
3) Trial transcript of November 13, 2001 (2T)
4) Trial transcript of November 14, 2001 (3T)
5) Trial transcript of November 15, 2001 (4T)
6) Trial transcript of November 16, 2001 (5T)
7) Trial transcript of November 26, 2001 (6T)
8) Trial transcript of November 27, 2001 (7T)
9) Trial transcript of November 28, 2001 (8T)
10) Trial transcript of November 29, 2001 (9T)
11) Trial transcript of November 30, 2001 (10T)
12) Trial transcript of December 3, 2001 (11T)
13) Trial transcript of December 4, 2001 (12T)
14) Sentencing transcript of March 22, 2002 (13T)
15) Judgment of Conviction entered on 3/22/02
16) Defense Counsel's Brief and Appendix on Direct Appeal, Docket No. A-6380-01T4.
17) State's Brief on Direct Appeal
18) Appellate Division Opinion 10/06/03
19) Letter in lieu of formal petition for Certification 12/4/03.
20) State's letter of opposition to Certification
21) New Jersey Supreme Court Order Denying Certification 2/3/04
22) Defense counsel's Brief in Support of Motion for Post Conviction Relief – June 26, 2006
23) Defense Counsel's supplemental one-page letter presenting two additional issues – August 5, 2006
24) State's Letter in Lieu of Brief in Opposition – June 16, 2005
25) Post-Conviction Relief Hearing Transcript – November 3, 2006
26) Defendant's pro-se Supplemental Brief in Support of his Motion for Post-Conviction Relief – November 6, 2006
27) Honorable Joseph C. Cassini, III's Opinion – November 6, 2006.
28) Defense Counsel's Brief and Appendix on Appeal of the Order Denying Defendant's Application for PCR.
29) State's Brief in Opposition to Defendant's Appeal of the Order Denying Defendant's Application for PCR.
30) Appellate Division Opinion 4/9/10
31) Letter in lieu of formal petition for Certification 5/26/10
32) State's letter of opposition to Certification
33) New Jersey Supreme Court Order Denying Certification 9/23/10

22. 2002).  Petitioner was sentenced on March 22, 2002, to a term of life imprisonment with a thirty year parole disqualifier on the murder charge, to be served consecutive to a five-year prison term and three-year parole ineligibility on Count Six.  Count Five was merged into Count Six. (Ex. 15, J. of Conviction, Mar. 22, 2002).

Petitioner filed a direct appeal from his conviction and sentence before the Superior Court of New Jersey, Appellate Division.  (Ex. 16, Br. and App. on Behalf of Def.-Resp., Jan. 31, 2003). On October 6, 2003, the Appellate Division affirmed the conviction but remanded the matter to the trial court for resentencing because the trial court improperly merged Count Six and Count Five rather than merging Count Six into Count One and separately imposing a sentence on Count Five.  (Ex. 18, App. Div. Op. at 4-5).  The Supreme Court of New Jersey denied certification on January 29, 2004.  (Ex. 21).

On February 17, 2004, Petitioner filed a state petition for post-conviction relief ("PCR"). (Ex. 22 at 3).  A hearing was conducted on the PCR petition before Judge Cassini on November 3, 2006.  (Ex. 25, PCR-T).  Judge Cassini issued a written decision denying post-conviction relief on November 6, 2006.  (Ex. 27).  Petitioner appealed from denial of his state PCR petition.  (Ex. 28, filed Nov. 10, 2008).  The Appellate Division affirmed the denial of post-conviction relief on April 9, 2010.  (Ex. 30).  The Supreme Court of New Jersey denied certification on September 21, 2010.  (Ex. 33).

On July 14, 2010, Petitioner filed this petition for habeas relief under 28 U.S.C. § 2254. On July 26, 2010, the Honorable Stanley R. Chesler, U.S.D.J., issued an Opinion and Order directing Petitioner to show cause why his petition should not be time-barred.  (D.E. Nos. 2, 3). Petitioner filed a response on August 11, 2010.  (D.E. No. 4).  Judge Chesler determined that the

matter did not appear time-barred, pursuant to Petitioner's August 11, 2010 response, and accordingly issued a Notice and Order, pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000). (D.E. No. 5).   Thereafter, Petitioner filed a motion to stay this habeas action.  (D.E. No. 6).  On October 24, 2011, this Court issued an Opinion and Order denying Petitioner's motion to stay, and directed Respondents to file an answer to the petition.   (D.E. Nos. 8, 9).

On January 23, 2012, Respondents filed an answer to the petition.   (D.E. No. 16). Respondents provided the relevant state court record on February 14, 2012.  (D.E. Nos. 17, 18, 19 and 20).  Petitioner filed a traverse/reply on March 5, 2012.  (D.E. No. 24).

**B.  Factual Background**

The facts of the case were recounted in the published opinion of the Superior Court of New Jersey, Appellate Division, decided on October 6, 2003, with respect to Petitioner's direct appeal. This Court recites the pertinent facts as follows, affording appropriate deference to the state court's opinion, pursuant to 28 U.S.C. § 2254(e)(1).

On December 31, 1999, Rebecca Celusak and Stephen Calderone, the victim, drove to a New Year's Eve party at Yvette Weems apartment in Orange, New Jersey, where Ruthy Powell, Rhonda Jones, Shamira Jones, Dione Jones, and Petitioner, whose nickname was "Rhock," were present.   When Calderone and Celusek arrived, Calderone entered the building, while Celusek remained in the car.  Calderone asked Weems for something to eat and for drugs.  Weems then asked others at the party if they had any drugs, to which they replied, no.  Calderone then left the apartment and returned to his car.  (Ex. 18, Oct. 6, 2003 Appellate Division Opinion ("App. Div. Op.") at 5).

Petitioner, who had been outside of the apartment building, later returned, "busting through

4

the door." Seeing him reenter the apartment, Weems said, "Rhock, wait. Hold up. Don't come in here with all that." Petitioner approached the couch where two people who had been asked for drugs were sitting, and he turned and "went walking out with a gun in his right hand." After Petitioner left with the gun, Weems went to the kitchen window through which she saw Petitioner walk over to Calderone, who was standing by the car in which he arrived. Petitioner stopped directly in front of Calderone, and Weems, who could only see Petitioner's back, saw him put a gun in his right hand and shoot Calderone. Weems also heard the gunshot. After the first shot, Petitioner aimed the gun at Calderone's stomach. Weems said Petitioner shot Calderone again. She ultimately heard six shots. While Calderone was falling, Petitioner kept shooting. When Calderone hit the ground, Petitioner spit on Calderone and kicked him. (*Id.* at 6).

Another witness at the party, Powell, testified that Petitioner had rushed into the apartment and began "tussling" with two men. She said after Petitioner left the apartment, she heard someone screaming, "Rhock got a gun. Rhock got a gun." Powell then ran into the bedroom where the scream came from and saw a group of women standing by the window. When she looked out the window, she saw Petitioner approach Calderone and "shoot him one time … shoot him again." Another witness, Mustafa Laboo, testified that while standing about six feet from Petitioner, whom he knew as "Rhock," he saw him shoot Calderone. Shamira Jones testified that when she looked out of a window she saw Calderone and Petitioner, whom she knew as Rhock, "grabbing on each other, like almost wrestling." Jones further clarified that she saw "Rhock … grab [Calderone's] shirt and grab him on his pockets. That's it." Calderone did not get up after the "wrestling." (*Id.* at 6-7).

Celusak, who had been sitting outside in the car, saw someone run up to Calderone, who

5

was standing by the car, pull out a gun, and shoot him "many times."  Although Celusak could not

see the shooter's face, she saw "[h]is white t-shirt, jeans, his arm, and the gun."  The same attire

had been described by Weems when she identified Petitioner's clothing.  After the shooter finished

shooting, he walked past Celusak's car.  Celusak did not identify Petitioner as the shooter when

she was shown a six photo array at the police station.  Instead, she identified the shooter as an

individual named Maurice Rhock.  (*Id.* at 7).

Shakira Lewter, who lived near Weems, told the police that she did not see the face of the

shooter, but spoke with him outside of the apartment complex.  After describing him, she said she

knew him as a drug dealer who carried a gun who went by the name of "Rhock."  When provided

with a photo array by the police, she recognized a person who she referred to as "Little Mo."  The

photo was of Maurice Rhock, not defendant.  (*Id.* at 7-8).

Several days after the incident, on January 3, 2000, the police showed Lewter another photo

array.  Again she recognized Maurice Rhock.  At trial, however, Lewter testified that on January

3, 2000, she did not intend to identify Maurice Rhock as the shooter; rather, she meant that she

recognized Maurice Rhock.  Michael Gannon, a defense witness, testified that he had seen the

shooter selling Calderone drugs; the man's name was "Rhock" or "Rhock D."  Gannon stated that

he later learned the name of the drug dealer was Maurice Rhock.  City of Orange Police Officer

Christopher Dunn testified that the police were originally looking for a man named Maurice Rhock

in connection with the shooting.  Officer Shawn Harris testified that the name of the suspect he

was given was "Rhock."  He said when he went back to the police station, he entered the name

"Rhock" into the computer and came up with the name Maurice Rhock.  Maurice Rhock also went

by the name "Little Mo."  Consequently, the police initially intended to secure an arrest warrant

for Maurice Rhock for murder, but the police pulled the warrant because they were not "sure at that point that Maurice Rhock was the person who committed the crime."  During the subsequent investigation, "Rhock" was determined to be Petitioner, "Rahman Herrill."  On January 11, 2000, the police showed Powell a photo array from which she identified Petitioner as an individual known to her as "Rhock."  At that time, Weems also identified defendant from a photo array as the shooter.  (*Id.* at 8-9).

## II. MOTION FOR LEAVE TO AMEND

On June 2, 2015, Petitioner filed a motion for leave to amend his petition for a writ of habeas corpus with the Court.  (*See* D.E. No. 26).  By statute, Congress provided that a habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." *Mayle v. Felix*, 545 U.S. 644, 649 (2005) (quoting 28 U.S.C. § 2242).  Rule 15 of the Federal Rules of Civil Procedure allows a petitioner to amend his petition once "as a matter of course," so long as it is filed within 21 days of the filing of the original pleading.  *See* Fed. R. Civ. P. 15(a)(1)(A). Here, however, it has been five years since Petitioner filed his original petition.   Petitioner concedes that his motion for leave to amend is untimely, but argues that the two new claims he wishes to add "relate back" to his original, timely-filed petition pursuant to Federal Rule of Civil Procedure 15(c).  (*See* D.E. No. 26-1 at 3). The relation back provision of Rule 15 allows a petitioner to amend his petition when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  It is worth noting that Federal Rule of Civil Procedure 15(a)(2) generally directs that leave to amend a pleading should be "freely give[n] when justice so requires."

In *Foman v. Davis*, the United States Supreme Court interpreted the phrase "freely-given"

as a limit on a district court's discretion.  371 U.S. 178, 181-82 (1962).  It stated, "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome."  *Id.* at 182 (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)).  The Court went on to accept the principle that "the purpose of pleading is to facilitate a proper decision on the merits."  *Id.*  Thus, denying a motion for leave to amend must be justified.  Permissible justifications include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment.  *See Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995) (quoting *Foman*, 371 U.S. at 182)).

Thus, a district court may deny leave to amend a petition, regardless of the "relation back" provision, if the proposed amendment would be "futile."  A proposed amendment is futile if it would not survive a motion to dismiss.  *See* Fed. R. Civ. P. 15 Amended and Supplemental Pleadings, 1 Federal Rules of Civil Procedure, Rules and Commentary.  Here, Petitioner's proposed amendment is futile because federal habeas review is foreclosed by procedural default.  Therefore, Petitioner's motion for leave to amend his petition for a writ of habeas corpus will be denied.

In 2010, Petitioner filed a motion for a "stay and abeyance" shortly after filing his original petition, which the Court denied.  (*See* D.E. No. 8).  Petitioner hoped the Court would stay his habeas proceeding until Petitioner's two additional claims were exhausted in the New Jersey state courts.  The Court denied Petitioner's motion for a stay for failure to show good cause to allow it. (*Id.*).  After the Court denied Petitioner's motion for a stay, Petitioner filed a second petition for PCR with the New Jersey state courts, seeking to exhaust his two additional claims.  The PCR

8

court at the trial level dismissed Petitioner's claims as untimely per N.J. Rule 3:22-12(a)(2), and the Appellate Division affirmed.  The Supreme Court of New Jersey then denied certification. Though Petitioner's claims are now duly exhausted, federal habeas review on these two claims is nevertheless unavailable as they are procedurally defaulted.

Federal habeas courts generally may not review a state court's denial of a state prisoner's constitutional claim if "the state court's decision rests on a state procedural [ground] that is independent of the federal question." *Coleman v. Thompson*, 501 U.S. 722, 722-723 (1991). That is to say that, the procedural default must rest on an "independent and adequate state ground." *Harris v. Reed*, 489 U.S. 261, 266 (1989). Federal courts may not consider claims that are procedurally defaulted unless "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (quoting *Lines v. Larkin*, 208 F.3d 153, 159-60 (3d Cir. 2000)); *see also Winslow v. Pennsylvania Bd. of Prob. & Parole*, No. 12-3543, 2014 WL 2892401 at *10 (E.D. Pa. June 25, 2014).

In federal habeas cases, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Ineffective assistance of counsel can constitute "cause" to meet this standard as long as such a claim is presented to the state courts as an independent claim first.  *Id.* For ineffective assistance of counsel to constitute "cause" for purposes of excusing default, there must be a "reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."  *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also U.S. v. Daniels*, 209 F. App'x. 191, 196 (3d Cir. 2006).

9

The second prong of the test, prejudice, requires Petitioner to prove not merely that the errors at trial created a possibility of prejudice, but that they worked to Petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *Werts*, 228 F.3d at 193 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This essentially requires Petitioner to show that he was denied fundamental fairness at trial.

If there is no cause and prejudice, a federal court may still review a defaulted claim if failure to do so will result in a "fundamental miscarriage of justice." *See Thompson*, 501. U.S. at 731. This means a constitutional violation has probably resulted in the conviction of one who is actually innocent or that it is more likely than not that no reasonable juror would have convicted Petitioner. *See Werts, supra,* at 193.

In the case before the Court, Petitioner raised his claims to the state of New Jersey on PCR, and the State held that the claims were procedurally barred as untimely. On PCR at the trial level, Judge Cassini explained that Petitioner's second PCR petition, raising the claims now before the Court, was barred by New Jersey Rules 3:22-4 and 3:22-12(a)(2). (*See* D.E. No. 29-1 at 5). Rule 3:22-4 states, in pertinent part: "A second or subsequent petition for Post-Conviction Relief shall be dismissed unless . . . it is timely under R. 3:22-12(a)(2)."

And Rule 3:22-12(a)(2) provides, in relevant part, that:

> Notwithstanding any other provision in this rule, no second or subsequent [PCR] petition shall be filed more than one year after the latest of
>
> . . .
>
> (B) the date on which the factual predicate for the relief sought was discovered, if the factual predicate could not have been discovered earlier through the exercise of reasonable diligence[.]

*See* N.J. R. 3:22-12(a)(2).

Judge Cassini held, and the Appellate Division affirmed, that "defendant's PCR petition [is] barred because it [is] untimely . . . and also because [Petitioner] failed to establish a basis satisfying the exceptions in Rule 3:22-4(b)(2) permitting review of a second PCR petition." (D.E. No. 29-1 at 7). With no reference to federal law, the aforesaid "plain statement" easily meets the requirement that the state courts' decision rest on an adequate and independent state procedural ground. *See Harris*, 489 U.S. at 256.

Turning to the statutory exceptions referenced by Judge Cassini, there is no new constitutional rule of law to apply to satisfy 3:22-4(b)(2)(A), nor is it true that the factual predicate leading to Petitioner's claim was impossible to discover earlier, thereby leaving 3:22-4(b)(2)(B) unfulfilled, and Petitioner does not allege ineffective of counsel on his first trip through PCR, thus failing to satisfy 3:22-4(b)(2)(C). Therefore, because Petitioner's second PCR petition was procedurally barred as untimely according to a State procedural rule, and because he does not meet any statutorily defined exception to the State procedural rule, Petitioner's claims are procedurally defaulted at the federal level. *See Thompson*, 501 U.S. at 750; *Murray*, 477 U.S. at 492.

Petitioner may overcome the procedural default of his claim if he can show the Court both cause and prejudice, as defined above. Whether or not Petitioner showed "cause" for failing to raise these two claims in his initial PCR petition was addressed by the Court in 2011 when Petitioner moved to stay his habeas petition to exhaust the two claims now before the Court. There, the Court found that "Petitioner has not shown good cause for failing to raise these claims during state court review." (D.E. No. 8 at 10). The Court held that it was "highly implausible" that the details comprising these new claims were unknown to Petitioner at the time of either his direct

appeal or his state PCR proceedings.  (*Id*. at 11).  The Court noted that Petitioner alleged he learned of these potential claims from reading his own pretrial transcripts, which is something he could have done at any point during this process.  (*See* D.E. No. 6 at 5).

As Petitioner cannot show "cause" to overcome the default before the New Jersey state courts, the Court need not reach the prejudice prong of the analysis.  Therefore, because Petitioner's new claims are procedurally defaulted, thus foreclosing federal habeas review, and Petitioner is unable to show the necessary cause and prejudice to excuse the default, Petitioner's motion for leave to amend his petition is denied due to futility.  *See* Fed. R. Civ. P. 15(c); *Forman*, 371 U.S. at 182.

## III.  STATEMENT OF CLAIMS

Petitioner asserts the following claims in his petition for habeas relief:

GROUND I:  The trial court erred in denying a motion for a new trial based on the actions of court officers that were prejudicial against Petitioner.

GROUND II:  The trial court's jury instruction on identification was prejudicial against Petitioner.

GROUND III:  The trial court erred in failing to instruct the jury on the lesser included offense of passion/provocation manslaughter.

GROUND IV:  Petitioner was deprived of a fair trial by the trial court's allegedly improper limited cross-examination on gang activity in the area of the killing.

GROUND V:  Ineffective assistance of trial counsel.

GROUND VI:  Ineffective assistance of appellate counsel.

GROUND VII:  The jury verdict was not supported by the evidence.

GROUND VIII:  The PCR court erred in failing to grant Petitioner an evidentiary hearing regarding his ineffective assistance of counsel claims.

GROUNDS IX, X, XI and XII:  The state courts' rulings that Petitioner was not denied the effective assistance of counsel was contrary to clearly established federal law.

GROUND XIII:  Petitioner was denied his right to a fair trial when the state courts ruled that prejudicial remarks of trial counsel did not amount to ineffective assistance of counsel.

The State essentially contends that the petition is without merit or fails to raise a claim of federal constitutional dimension that would entitle Petitioner to habeas relief.  The State also asserts that Petitioner failed to exhaust his state court remedies as to all grounds in the petition, and that Petitioner has procedurally defaulted on some of his claims.

## IV.  STANDARD OF REVIEW

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), 28 U.S.C. § 2254 now provides, in pertinent part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

"Clearly established Federal law" should be determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S. Ct. at 2155. The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274–75.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the

correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. *See Harrington v. Richter*, 562 U.S. 86, 99 (Under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." (quoting *Williams*, 529 U.S. at 410)); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 100 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 99-100; *see also Metrish*, 133 S. Ct. at 1787.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); *Cullen*, 131 S. Ct. at 1398; *Eley v. Erickson*,

712 F.3d 837, 845 (3d Cir. 2013); *see also Harrington*, 562 U.S. at 100 ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010) ("[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Lockyer*, 538 U.S. at 75 ("[I]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (quotation marks omitted)). Further, AEDPA's standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013) (quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of "rebutting the presumption by 'clear and convincing evidence'" (quoting 28 U.S.C. § 2254(e)(1))); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made

16

explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief under AEDPA, the court may grant the writ only if the error was not harmless.  Under the harmless error standard, the court must "assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007).  The court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *see also Eley v. Erickson*, 712 F.3d 837 (3d Cir. 2013).

Finally, a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  *See Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citing *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969)); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir.1998).

## V.  DISCUSSION

### A.  Alleged Prejudicial Acts of Court Officers

In his first claim, Petitioner asserts that the trial court erred in denying his motion for a new trial because of "three improper incidents that occurred during the trial involving the county

sheriff's department, two of which were directly prejudicial to the defendant" since they occurred in the presence of the jury.  (Pet., Add. II § A, ¶1).  Petitioner raised this claim on direct appeal. (Ra18).

As to the first incident, which occurred on November 16, 2001, defense counsel had informed the trial court that "an individual from the sheriff's department . . . came over to my client and asked him . . . Do we know each other?  Do we have some business together?"  (Ra18, App. Div. Op. at 9).  Defense counsel further stated that he "thought he overheard the sheriff say, '[W]hy are you looking at me? Or, why are you eyeballing me?'  Defense counsel later found out 'that there was some sort of allegation that somebody, not my client, that somebody may have said something about Anthrax.'  This incident did not occur in the presence of the jury."  (*Id.* at 9-10).

The second incident involved two African-American men who had walked into the courtroom and were then escorted out by security officers.  (*Id.* at 10).  "The men were 'taken downstairs, checked for warrants, checked to see if they had anything pending, never to appear again.'  Neither the judge nor the prosecutor observed the incident.  Addressing the trial court, defense counsel remarked, 'I have this other concern about what's going on in the courtroom.  I can't see it because I am trying to concentrate on the witness, but I did hear the shuffle of people being removed and sheriff's officers coming in here.'  The judge said he did not get the sense that the incident impacted the jury or prejudiced defendant.  Defense counsel later certified that the two men, who were sitting with defendant's girlfriend, were removed because of an alleged threat overheard by the victim's family."  (*Id.*).

Finally, the third incident related to a security checkpoint monitored by guards outside the courtroom in response to an alleged Anthrax scare.  (*Id.*).  "Persons entering the courtroom had

their identification checked and were either subject to a search with a wand or passed through a metal detector.  The security checkpoint was set up at lunch on November 16, 2001, and was removed before the jury left for the day, but not before 'all of the jurors who left the courtroom at the break and reentered the Courtroom observed the security checkpoint.'"  (*Id.* at 10-11).

Petitioner moved for a new trial based on these three incidents.  The trial judge denied the motion because the "extra security procedures were not directed at the jurors, [who] were not required to go through screens," or the attorneys or witnesses in the case, but rather, it was aimed at spectators, and only for a "short period of time."  (*Id.* at 11).  Moreover, the trial court noted that "since 9/11 . . . citizens have become accustomed to the presence of security, traveling, whether it's on a plane or even in a car going back and forth to New York.  The members of the public pass through metal detectors and have their bags inspected in airplanes, here in the courthouse, even at amusement parks."  (*Id.*).  Finally, the trial court concluded that it would be speculative to assume that the security measures impacted the jury, especially when "not one juror during the rest of the trial raised any question or concern about security.  The trial did last a long time."  (*Id.* at 11-12).

The Appellate Division found "no miscarriage of justice" by the trial court's denial of a new trial on this issue.  (*Id.* at 12).  Specifically, the court noted that the first incident had occurred "outside the presence of the jury," and the second incident, while in the courtroom, "was not observed by either the judge or the parties."  (*Id.*).  Thus, because Petitioner failed to "show [] that the jury witnessed the sheriff remove the two men from the courtroom, or, that if it did, that the jury believed the two men were associated with" Petitioner, the Appellate Division found that "to draw such a conclusion would be rank speculation."  (*Id.* at 13).  Further, as to the third incident

regarding the security checkpoint, the Appellate Division observed that, given "the proximity of the trial to September 11, 2001 [and the Anthrax scare,] a certain level of security [would be] expected" by the general public. (*Id.*). Moreover, "the jurors did not pass through the security checkpoint." (*Id.*). Consequently, the Appellate Division held that there was no prejudice to Petitioner and that "none of the incidents, either individually or together, amounted to a miscarriage of justice so as to deny defendant a fair trial." (*Id.* at 13).

In *Holbrook v. Flynn*, the Supreme Court held that the conspicuous positioning of armed security officers during trial is not the sort of "inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial." 475 U.S. 560, 568-69 (1986). Thus, the Court reasoned, "the question must be not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether an unacceptable risk is presented of impermissible factors coming into play." *Id*. at 570 (internal quotation marks and citation omitted). The Court further articulated that:

> Unlike a policy requiring detained defendants to wear prison garb, the deployment of troopers was intimately related to the State's legitimate interest in maintaining custody during the proceedings and thus did not offend the Equal Protection Clause by arbitrarily discriminating against those unable to post bail or to whom bail had been denied.

*Id*. at 571–72; *see also Deck v. Missouri*, 544 U.S. 622, 632 (2005) (recognizing "the need to give trial courts latitude in making individualized security determinations"); *Illinois v. Allen*, 397 U.S. 337, 344 (1970) (conceding that in extreme situations shackling and gagging of defendant may be "the fairest and most reasonable way to handle" a particularly disruptive defendant).

The Supreme Court clarified the limited nature of review of such a claim in a habeas

20

petition under § 2254:

> [O]ur task here is not to determine whether it might have been feasible for the State to have employed less conspicuous security measures in the courtroom.  While, in our supervisory capacity, we might express a preference that officers providing courtroom security in federal courts not be easily identifiable by jurors as guards, we are much more constrained when reviewing a constitutional challenge to a state-court proceeding.  All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Holbrook*, 475 U.S. at 572 (footnote omitted).

Here, Petitioner has not shown that the challenged security measures were inherently prejudicial or caused actual prejudice. *See Holbrook*, 475 U.S. at 572.  The security measures implemented by the sheriff's officers in this case bear no resemblance to those the Supreme Court has held impermissible; that they were conspicuous is not alone sufficient grounds to overrule the state court's judgment.  There were three brief and separate incidents: one was not in the presence of the jury, and the other two were of such short duration that they did not have the capacity to prejudice Petitioner.  Moreover, the last two incidents were in no way associated with Petitioner, and thus, would not have affected the jury in its deliberations or verdict.  Accordingly, this Court finds that the New Jersey state courts' rejection of Petitioner's Sixth and Fourteenth Amendment claim that the security measures implemented violated his right to a fair trial was not contrary to, nor an unreasonable application of Supreme Court precedents.  *See Holbrook*, 475 U.S. at 568-72; *see also Sutton v. Bell*, 645 F.3d 752, 756 (6th Cir. 2011) (holding that increased security consisting

21

of four guards behind defense table, one next to jury, two in balcony, and one at each of courtroom's three doors in trial of three inmates for violently murdering an inmate was not unconstitutional under *Holbrook*).  Therefore, Petitioner's claim for habeas relief on Ground One is denied for lack of substantive merit.

### B.  Jury Instruction Claims

In Grounds Two and Three, Petitioner asserts that the trial court's jury instruction regarding identification was prejudicial, (Pet. Add. II § B), and that the trial court erred in failing to instruct the jury on the lesser included offense of passion/provocation manslaughter.  (*Id.* § C).

#### 1.  Identification Jury Instruction

Petitioner contends that the trial court's jury charge regarding identification was prejudicial and "one-sided" because, while it recited state evidence of witnesses' in-court and out-of-court identifications of Petitioner, it did not mention any favorable defense evidence on the issue of identification.  (*Id.* § B).  When Petitioner raised this claim on direct appeal, the Appellate Division rejected his argument noting that "[a] judge does not have to fully recite the Model Jury Charges when instructing a jury," and need only provide an instruction that, "as a whole . . . adequately convey[s] the applicable law and [would] not mislead or confuse the jury."  (Ra18 at 14).  Moreover, the Appellate Division held that a court's failure to refer to specific facts favorable to the defense does not constitute plain error.  Rather, the court held that "[t]he strengths and weaknesses of the [identification] evidence is more appropriately left for counsel," (*id.* at 15, quoting *State v. Robinson*, 165 N.J. 32, 45 (2000)), which defense counsel adequately addressed in summation by attacking the credibility of the identification witnesses.  The Appellate Division further observed that the "jury was well aware of the conflicting testimony as to whether

22

[Petitioner] or Maurice Rhock was the perpetrator." (Ra18 at 15-16). Thus, the court concluded that the record did not show that the jury misunderstood its role in determining whether Defendant or another person committed the crime. (*Id.* at 16). Finally, the Appellate Division rejected Petitioner's argument that the trial judge "included evidence favorable to the State in the jury instruction, but did not include evidence favorable to the defense." (*Id.*). The Appellate Division found that the only evidence that the trial judge referred to was "the list of names of the State's witnesses, and that they had testified that they saw defendant commit the crime," which was not error. (*Id.*).

In general, a jury instruction that is inconsistent with state law does not merit federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding, the only question for the court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be viewed in the context of the instructions as a whole and the trial record." *Id.* Further, "in reviewing an ambiguous instruction . . ., [the court should] inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (citations omitted); *see also Smith v. Spisak*, 558 U.S. 139, 149 (2010) (overruling Court of Appeals determination that jury instruction was unconstitutional where such determination had not previously been made by the Supreme Court); *Waddington v. Sarausad*, 555 U.S. 179 (2009).

The United States Court of Appeals for the Third Circuit has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury

instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 111 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." *Id*. at 110.

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972); *see also Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused); *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997), *cert. denied*, 522 U.S. 1109 (1998) (the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law*"). But see Neder v. United States*, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

In this case, the Appellate Division plainly supported its determination that the Model Jury Charge on identification given by the trial court did not constitute plain error. This Court has reviewed the jury instructions as a whole, as well as the identification instruction at issue, together with the trial record, and likewise finds no error of constitutional dimension in this case. Assessed in its entirety, this Court cannot find that Petitioner's due process rights were violated in any way by use of a model jury charge on identification. Further, any deficiencies by use of model jury charges instead of a more tailored instruction on identification citing Petitioner's purportedly

favorable evidence constitute harmless error and were not capable of producing an unjust result. *See, e.g., Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) ("[E]ven if the trial court's accomplice liability charge was in some respect ambiguous, there is no reasonable likelihood that the jury applied the instruction in a manner that relieved the Commonwealth of its burden of proof with respect to first degree murder."). Additionally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In short, the trial court's charge to the jury on identification testimony was proper and did not have the capacity to affect the verdict in any substantial or injurious way, or to prejudice Petitioner in any way. *See Brecht*, 507 U.S. at 637-38.

Therefore, having carefully reviewed the jury charges as a whole, this Court finds that Petitioner was not deprived of a fair trial by the identification instruction given, and any error as asserted by Petitioner in this regard was, at the very most, plainly harmless in light of the overall record. Moreover, the Appellate Division's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Finally, this Court notes that Petitioner has not identified a Supreme Court precedent that was contravened by the state court ruling. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2. *Failure to Instruct on Lesser Included Offense*

In his third claim for habeas relief, Petitioner contends that the trial court erred in not giving a jury charge on the lesser included offense of passion/provocation manslaughter. (Pet. Add. II § C). Petitioner notes that the trial judge had asked counsel for "input regarding 'the issue of lesser included offenses.'" (*Id.* § C, ¶ 1). While defense counsel did not request it, the prosecutor suggested that the court instruct the jury on both aggravated and reckless manslaughter based on

the testimony of witness Shamira Jones, who had testified that the victim and Petitioner appeared to be wrestling.  (*Id.* ¶ 3).  The trial judge, however, discounted Ms. Jones testimony for lack of detail and corroboration by other witnesses, and declined to give a jury charge on the lesser included offense of passion/provocation manslaughter.  (*Id.* ¶ 4).  Petitioner argues, as he did on direct appeal, (*see* Ra16 at 47), that the omission of such a jury instruction "prevented the jury from properly considering the testimony by Jones, which the jurors [purportedly] asked to re-read," and therefore, his conviction should be reversed.  (Pet. Add. II § C, ¶ 7).

The Appellate Division noted that the offense of passion/provocation manslaughter is not demonstrated unless the following four elements are met:  "'[(1)] the provocation must be adequate; [(2)] the defendant must not have had time to cool off between the provocation and the killing; [(3)] the provocation must have actually impassioned the defendant; and [(4)] the defendant must not have actually cooled off before the slaying.'"  (Ra18 at 17-18 (quoting *State v. Mauricio*, 117 N.J. 402, 411 (1990))).  The Appellate Division further held that the evidence at trial was insufficient to support a passion/provocation manslaughter charge, observing:

> To support his request for the charge, defendant relies on the testimony of Shamira Jones.  According to the judge when he denied the motion, Jones saw a "scuffle or a tussling, or something of that nature . . . ."  The court did not find her testimony of "any great detail" sufficient to warrant the requested charge.  We agree.  Jones testified that when she looked out the window of Weems' apartment she saw defendant and Calderone "grabbing on each other, like almost wrestling."  When pressed to clarify the term "wrestling," she stated, "I seen Rhock like grab [Calderone's] shirt and grab him on his pockets.  That's it."  In other words, Jones did not see Calderone provoke defendant prior to the shooting.  At best, she saw defendant grab Calderone's shirt.  The overwhelming evidence is that defendant approached Calderone and shot him multiple times.  The evidence was simply insufficient to warrant a

26

passion/provocation manslaughter charge.

Furthermore, although "mutual combat under certain circumstances may constitute provocation and reduce murder to manslaughter, the contest must be waged on equal terms." [citation omitted]. The offense is not manslaughter where the defendant alone is armed. [citation omitted]. Here, there was no evidence that at the time he was shot the victim was carrying a weapon. Only defendant, who shot the victim multiple times, was armed.

(Ra18 at 18-19).

As discussed above, questions regarding jury instructions are typically matters of state law that are not cognizable in a federal habeas action, unless the instruction (or omitted instruction as asserted here) was so prejudicial as to amount to a violation of due process and fundamental fairness. *See McGuire*, 502 U.S. at 72-73. The Supreme Court has held that "due process requires that a [jury] instruction on a lesser included offense be given only when the evidence warrants such an instruction." *Hooper v. Evans*, 456 U.S. 605, 611 (1982). Moreover, on habeas review, a trial court's finding as to whether the evidence at trial warranted an instruction is a finding of fact entitled to the § 2254(d) presumption of correctness. *Miller v. Fenton*, 474 U.S. 104, 111-12 (1985).

Here, the state courts found that the evidence did not support an instruction on passion/provocation manslaughter. (Ra18 at 18). This Court agrees and finds that Petitioner was not deprived of a fair trial by the omission of a jury charge on passion/provocation manslaughter. There was no evidence that Petitioner and Calderone were engaged in a mutual combat. There was no evidence that the victim provoked Petitioner. There was no evidence that the victim was armed; in fact, the evidence showed that only Petitioner was armed. (*Id.* at 19). Consequently, there was no rational basis for the jury to convict on a passion/provocation manslaughter charge

27

as suggested by Petitioner.  The state courts' decisions in this regard were neither contrary to nor an unreasonable application of Supreme Court precedent.  Accordingly, Petitioner is not entitled to relief on this claim.

### C.  Improper Limitation of Cross-Examination Claim

Next, in Ground IV of his petition, Petitioner alleges that he was deprived of a fair trial by the trial court's limitation of defense counsel's cross-examination of Mustafa Laboo—an eyewitness who testified that Petitioner was the shooter—regarding gang activity in the area of the killing.  (Pet. Add. II § D).  This claim was raised on direct appeal, and the Appellate Division found as follows:

> The relevant portion of Laboo's cross-examination was:
> Q:  No you're from that area originally, aren't you? [sic]
> A:  Yeah.
> Q:  That's a gang area, isn't it, Bloods?
> A:  If you want to say that.
> Q:  Mr. Laboo –-
> A:  I'm not in a gang.  Maybe they probably be around there, yeah, but that's not really what I was involved in, no.
> Q:  But the gang that controls that particular project is the Bloods, correct?
> [State]:  Objection your honor to the relevancy of the question.
> Court:  There's no question pending, Mr. Laboo.
> [Defense Counsel]:  Your honor –-
> Court:  We're going to have to conclude anyway.  It's getting late, I lost track of the time. ... We can deal with that.
>
> [The court excuses the jury for the day.]
>
> The parties then argued the objection after the court excused the jury.  After acknowledging that the defense's questioning assumed a fact not in evidence, the judge stated, "Well, it's getting late.  Let's continue in the morning."  Defense counsel did not pursue the issue the next day during his continued questioning of Laboo.

(Ra18 at 19-20).

The Appellate Division found Petitioner's argument on this claim to be unpersuasive.  (*Id.*

28

at 21).  First, the Appellate Division noted that the judge did not make a decision on defense counsel's objection, but instead adjourned the proceedings for the day.  The defense counsel did not continue with the line of questioning the next day.  (*Id.*).  Thus, although the trial judge had stated that defense counsel's questioning assumed a fact not in evidence, the judge made no ruling at that time prohibiting the continuation of that line of questioning.  (*Id.*).  Accordingly, "no ruling exist[ed] for defendant to contest."  (*Id.* at 21).

Second, the Appellate Division reasoned that, even if it were to conclude "that the trial [judge] did exclude the gang-related evidence," there was no abuse of discretion because "there was no evidence in the record from which a factfinder could reasonably infer that the killing was gang-related."  (*Id.*).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI.  The protections of the Confrontation Clause necessarily include the right to cross-examination a witness.  *See Smith v. Illinois*, 390 U.S. 129, 131 (1968).  The scope of such cross-examination includes broad and basic information regarding the witness; for instance, when credibility is at issue, the trial court cannot ordinarily prohibit the defense from inquiring into a witness's identity and residence.  *See id*.  Such questions are "not only an appropriate preliminary to the cross-examination of the witness, but . . . [are] an essential step in identifying the witness with his environment, to which cross-examination may always be directed."  *Id*. at 132 (quoting *Alford v. United States*, 282 U.S. 687, 693 (1931)).

The right to cross-examination, however, is not without limits, as "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v.*

29

*Fensterer*, 474 U.S. 15, 20 (1985).  Thus, the scope of cross-examination regarding a particular line of inquiry falls necessarily "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate]."  *Alford*, 282 U.S. at 694.  "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  The Third Circuit also has consistently recognized that a trial court may limit cross-examination in certain circumstances.  For instance, in *United States v. Tykarsky*, the Third Circuit upheld a District Court decision which restricted cross-examination when it was repetitive, confusing, or irrelevant.  446 F.3d 458, 475 (3d Cir. 2006).

Here, Petitioner fails to show that the trial judge abused his discretion and excluded relevant testimony at trial.  As the Appellate Division observed, there was no evidence in the record from which the jury could have reasonably inferred that the killing was gang-related.  (Ra18 at 21).  Moreover, the record shows that the trial judge had not ruled on whether defense counsel could continue with the line of questioning; instead, the court adjourned the proceedings for the day, and on the next day, defense counsel did not pursue the issue.  (*Id.*).  Therefore, this Court finds no merit to Petitioner's claim for habeas relief.

### D.  Sufficiency of Evidence Claim

In Ground Seven of his petition, Petitioner asserts that the jury verdict was inconsistent and not supported by the evidence.  (Pet. Add. II § G).  In particular, Petitioner alleges that the evidence on identification was contradictory.  (*Id.* ¶ 2).  For instance, the original identifications "could have described a large number of people . . . [and] none of the witnesses gave any particular

characteristics that fit . . . the Petitioner[,]" such as tattoos on his arms or a scar on his nose.  (*Id.* ¶ 3).  In addition, certain witnesses allegedly testified that the perpetrator had a shaved head on one side, unlike Petitioner.  (*Id.* ¶ 8).  Moreover, neither the police nor prosecutor's office conducted a line-up for identification "despite a request from a crucial eyewitness[, Celusak]." (*Id.* ¶ 7). Further, "[o]ne witness, Powell, confessed to committing perjury[,]" and another witness, Weems, admitted to being angry with Petitioner.  (*Id.* ¶ 4).  Finally, according to Petitioner, the police conducted a "haphazard" investigation, arrived late to the crime scene and neglected to cordon off the area, which he alleges contributed to the loss of exculpatory evidence.  (*Id.* ¶ 7).

The clearly established federal law governing this claim was announced in *Jackson v. Virginia*, 443 U.S. 307 (1979) (per curiam).  The Supreme Court held that the constitutional minimum standard governing a challenge to the sufficiency of the evidence on a habeas claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citation omitted).  Stated differently, a court reviewing the sufficiency of the evidence may overturn a conviction only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Id.* at 324 (footnote omitted).  "[F]ederal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 324, n.16).  The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas

sufficiency review.  *See Jackson*, 443 U.S. at 319.

The Supreme Court has made clear that:

> *Jackson* claims face a high bar in federal habeas proceedings
> because they are subject to two layers of judicial deference. First, on
> direct appeal, it is the responsibility of the jury—not the court—to
> decide what conclusions should be drawn from evidence admitted
> at trial. A reviewing court may set aside the jury's verdict on the
> ground of insufficient evidence only if no rational trier of fact could
> have agreed with the jury. And second, on habeas review, a federal
> court may not overturn a state court decision rejecting a sufficiency
> of the evidence challenge simply because the federal court disagrees
> with the state court. The federal court instead may do so only if the
> state court decision was objectively unreasonable.

*Johnson*, 132 S. Ct. at 2062 (internal quotations and citations omitted).

The Court further admonished that reviewing courts should not "impinge[] on the jury's
role as factfinder" through "fine-grained factual parsing" and reminded that "Jackson leaves juries
broad discretion in deciding what inferences to draw from the evidence presented at trial."  *Id.* at
2064.  Additionally, as noted above, state court factual determinations are presumed to be correct.
*See Werts*, 228 F.3d at 196.

Here, Petitioner raised the sufficiency of evidence claim in his state PCR proceedings.
(Ra22, Def's Br. in Supp. of PCR Mot. at 44).  In particular, Petitioner argued that "identification
was the crux of the case and witnesses proffered by the state contradicted themselves several times
regarding the issue."  (*Id.* at 45).  The PCR trial court first noted that the claim, if meritorious,
should have been raised on direct appeal.  (Ra27, Letter Dec. of Hon. Joseph C. Cassini, III, Nov.
6, 2006, at 12).  Moreover, the PCR trial court opined that "defense counsel in summation attacked
the credibility of the witnesses in identifying the defendant as the shooter and the jury was well
aware of the conflicting testimony.  Thus, an enforcement of the procedural bar to raising this

claim does not appear to result in fundamental injustice," and "denial of relief is not contrary to either the Constitution of the United States or the State of New Jersey." (*Id.* (internal quotation marks and citations omitted)). The Appellate Division found that this claim was "without sufficient merit to warrant discussion in a written opinion." (Ra30, App. Div. PCR Op. at 10); *State v. Herrill*, No. A-2846-06T4 (N.J. Super. Ct. App. Div. Apr. 9, 2010).

It is clear from this Court's review of the record that the jury's verdict was amply supported by the evidence. While Petitioner argues that there was conflicting identification testimony, it is plain that the jury credited the testimony of those State witnesses who identified Petitioner. It was within the sole province of the jury as the finder of fact to assess the credibility of the witnesses and to choose among reasonable constructions of the evidence. *See Jackson*, 443 U.S. at 319. Thus, giving due deference to the jury's responsibility as the sole fact finder to "fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," *id.*, this Court concludes that the evidence presented at Petitioner's trial was sufficient to support his conviction. Accordingly, this Court will not disturb the jury's verdict where the record shows sufficient evidence, including identification testimony, to support it.

Moreover, this Court finds no constitutional basis to invalidate the state court conviction because Petitioner has not shown a deprivation of a constitutional right, an unreasonable application of federal law by the state court, "or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," as required to grant habeas relief pursuant to 28 U.S.C. § 2254(d). As Petitioner has not carried his burden to warrant habeas relief on his insufficiency of evidence claim, the claim is denied for lack of merit.

### E.  Ineffective Assistance of Counsel Claims

The remaining claims in the petition, namely, Grounds Five, Six, and Eight through Thirteen, involve claims of ineffective assistance of both trial and appellate counsel, as well as related claims that the state PCR court's denial of Petitioner's ineffective assistance counsel claims was contrary to clearly established federal law.   Petitioner alleges numerous instances of ineffective assistance of counsel at trial, including trial counsel's:  (1) failure to request a pretrial *Wade* hearing that likely would have excluded out-of-court identifications, (Pet. Add. II § E91, ¶ 1); (2) failure to object to jury instruction on identification and its subsequent cross-racial identification charge, (*id.* ¶ 2); (3) failure to request *voir dire* of jury panel in light of trial counsel's complaints about the conduct of the sheriff's officers, (*id.* ¶¶ 3, 4); (4) waiver of Petitioner's right to testify at trial against Petitioner's wishes, (*id.* ¶ 5; *id.* § J); (5) prejudicial remarks made by counsel during his opening statement to jury that Petitioner was "a bad person who was predisposed to commit crime," and that "identification [would] not be contested at trial[,]" (*id.* § E(b), ¶ 2), as well as admitting that Petitioner was in jail for 18 months before trial (offered to show that police had the opportunity and knew where Petitioner was so as to conduct a physical line-up, yet failed to do so), (*id.* § E(b), ¶ 2; § M; § E(f)); (6) failure to properly cross-examine witnesses on issue of gang-related activity in the area of the crime, (*id.* § E(d)); (7) lack of preparation and investigation to mount a capable defense with respect to identification and witness credibility and motive issues, (*id.* § E(e)); and (8) failure to request jury charge on lesser included manslaughter offenses.   (*Id.* §§ E(g), E(k), E(e), ¶ 19).   Petitioner also alleges that his appellate counsel provided constitutionally ineffective assistance by failing to adequately prepare arguments for Petitioner's appeal and by failing to meet and communicate with Petitioner in preparation of the direct appeal.   (*Id.* §§ E(e-l), ¶ 3-4).   The Court first will discuss the clearly established federal

standard for evaluating claims of ineffective assistance of counsel, as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

The Supreme Court "has recognized that the right to counsel is the right to the effective assistance of counsel.  Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.  Counsel, however, can also deprive a defendant of the right to effective assistance, simply by failing to render adequate legal assistance."  *Strickland*, 466 U.S. at 686 (internal quotation marks omitted) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970) and *Cuyler v. Sullivan*, 446 U.S. 335, 344–50 (1980)).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Ross v. Varano*, 712 F.3d 784, 797-98 (3d Cir. 2013).

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) that but for counsel's errors the result of the underlying proceeding would have been different.  *Id.* at 694.  "Since *Strickland*, the Supreme Court and [the Third Circuit] have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009)).

When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "'[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's

performance fell below *Strickland*'s standard.'"  *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562

U.S. at 99).  As noted, for purposes of § 2254(d)(1), "an *unreasonable* application of federal law

is different from an *incorrect* application of federal law."  *Id*. (internal quotation marks and

citations omitted) (emphases in original).  "A state court must be granted a deference and latitude

that are not in operation when the case involves [direct] review under the *Strickland* standard

itself."  *Id*.  Federal habeas review of ineffective assistance of counsel claims is thus "doubly

deferential."  *Cullen*, 131 S. Ct. at 1403; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123

(2009).  Federal habeas courts must "take a highly deferential look at counsel's performance"

under *Strickland*, "through the deferential lens of § 2254(d)."  *Cullen*, 131 S. Ct. at 1403 (internal

quotation marks and citations omitted).

### 1.  Failure to Request a Wade Hearing

Petitioner asserts that his trial counsel was ineffective in failing to request a *Wade* hearing

to suppress identification evidence.  (Pet. Add. II § E(1)).  In support of this claim, Petitioner

argues that "the out-of-court identifications made by witnesses Powell, Celusak, Laboo, Weems

and Lewter would have been excluded because there existed a very substantial likelihood of an

irreparable misidentification of the Petitioner."  (*Id.* ¶ 1).  Petitioner further notes that these

witnesses were inconsistent and contradictory in their statements, no one had mentioned

Petitioner's tattoos, and there was confusion over who exactly was "Rhock," "Little Mo," and

"Little Moo."  (*Id.* § E(e), ¶¶ 3, 4, 7, 8).

In rejecting Petitioner's claim on appeal from denial of his PCR petition, the Appellate

Division found that Petitioner failed to satisfy the first prong of the *Strickland* test "because most

of the witnesses who identified him as the shooter actually knew him and had been at the New

36

Year's Eve party with him."  (Ra30, April 9, 2010 App. Div. Op. at 8).  The Appellate Division

further explained:

> Consequently, a Wade hearing would not have affected the admissibility of the identifications made by these witnesses. Although there were witnesses who reviewed a photo array and selected another person as the shooter, these were not witnesses who testified that they knew defendant, and there is no indication that these witnesses had been in attendance at the party where defendant had been for some time during the evening.  Consequently, the critical issue was the credibility of those witnesses whose identification of defendant was not based upon a photo array but their personal affiliation and knowledge of defendant before the shooting.  As the trial judge observed, the credibility of these witnesses was "well exhausted and scrutinized by [trial] counsel . . . ."

(*Id.* at 8-9).

The purpose of a *Wade* hearing is to determine whether identification testimony should be

suppressed because the manner in which the identification of the suspect was obtained was unduly

suggestive.  *United states v. Wade*, 388 U.S. 218, 242 (1967).  "Suggestive confrontations are

disapproved because they increase the likelihood of misidentification . . . ."  *Neil v. Biggers*, 409

U.S. 188, 198 (1972).  Significantly, the Supreme Court has ruled that, where "identifications were

entirely based upon observations at the time of the [incident] and not at all induced by the conduct"

of the pretrial identification procedures, the identification does not violate due process.  *See*

*Coleman v. Alabama*, 399 U.S. 1, 6-7 (1970).

As the circumstances in this case show, the witnesses' identifications of Petitioner as the

shooter were not the result of suggestive identification procedures, but rather, were based on the

witnesses' familiarity with Petitioner from the New Year's Eve party.  (Ra30 at 8-9).  Coupled

with the state courts' observation that trial counsel vigorously contested the credibility of these

witnesses on cross-examination and during summation, this Court agrees with the state courts' finding that Petitioner failed to satisfy the first prong under *Strickland*, namely, demonstrating that his "counsel's representation fell below an objective standard of reasonableness." *See* 466 U.S. at 688.

Therefore, this Court concludes that the state courts' decision on this claim of ineffective assistance of trial counsel for alleged failure to request a *Wade* hearing was not contrary to, or an unreasonable application of *Strickland* and its progeny.  Habeas relief on this claim is denied accordingly.

### 2. *Failure to Object to Jury Charge on Identification*

Next, Petitioner alleges that his trial counsel was ineffective "by failing to object to an unbalanced, one-sided, and prejudicial jury charge on identification," (Pet. Add. II § E(b), ¶ 6), and for failing to be "prepared with a suggested identification instruction or at the very least been prepared to argue for what his client needed and to which he was entitled rather than allow the prejudicial charge that did go to the jury get that far." (*Id.* § E(e), ¶ 16).  The PCR judge determined that counsel's performance was not deficient, (Ra27 at 10), and the Appellate Division found this claim to be without sufficient merit to warrant a written opinion.  (Ra30 at 10).

The Appellate Division found that the jury charge on identification was not plain error and did not rise to the level of a constitutional deprivation of due process.  *See supra* §IV(A).  Thus, if the charge was proper, as it was determined to be by the state courts, trial counsel's performance could not be deficient, and Petitioner cannot satisfy the first prong under *Strickland*.  Therefore, Petitioner is not entitled to habeas relief on this claim.

### 3. *Failure to Request Voir Dire of Jury Panel*

Petitioner also claims that his trial counsel was ineffective because counsel did not pursue *voir dire* of the jury after his complaints about the alleged prejudicial conduct of the sheriff's officers.  The issue of the conduct of the sheriff's officers was raised and rejected as meritless on direct appeal because the Appellate Division found no prejudicial impact on the jury.  *See supra* § IV(A).  Consequently, counsel's failure to *voir dire* the jury on this issue cannot be deemed deficient.  Moreover, defense counsel did file a motion for a new trial on this issue, which was denied by the trial court.  Thus, this Court finds no substantive merit to this claim that entitles Petitioner to habeas relief.  This claim is denied accordingly.

### 4.  Failure to Cross-Examine on Gang-Related Activity

Petitioner next alleges that trial counsel was ineffective because he failed to pursue a line of questioning that would have "raised the specter of reasonable doubt" by possibly attributing the murder to gang-land activity.  (Pet. Add II § E(d), ¶¶ 1-8).  As discussed above, Petitioner challenged the trial court's limitation on defense counsel's line of cross-examination concerning gang-related activity on direct appeal.  *See supra* § IV(C).  The Appellate Division concluded that there was no evidence in the record from which the jury could have reasonably inferred that the killing was gang-related.  (*Id.*).  Further, the court noted that the trial court had simply adjourned court for the day, and did not rule on this line of questioning.  (Ra18 at 20-21).

In his PCR proceedings, Petitioner argued that his trial counsel was ineffective by failing to properly cross-examine witnesses on the issue of gang-related activity in the area of the murder.  (Ra22 at 34-35).  The PCR court first ruled that the claim was procedurally barred because the argument was raised on direct appeal.  (Ra27 at 10).  Alternatively, the PCR court found that because trial counsel made use of the gangland-activity issue in his summation, the decision not

to pursue the line of questioning was a tactical choice.  (*Id.*).  The Appellate Division found no merit to Petitioner's challenge on PCR appeal.  (Ra30 at 10).

This Court also concludes that trial counsel's decision to forego further questioning that may have been precluded was likely a strategic choice.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted); *see also Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005) ("To overcome the *Strickland* presumption that . . . a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy.").  Petitioner has not met this burden here.  Further, Petitioner makes no showing of prejudice in this regard.  Thus, as Petitioner has not demonstrated that the state courts' decision as to this claim was contrary to, or an unreasonable application of *Strickland* and its progeny, habeas relief on this claim is denied.

### 5. *Failure to Seek Jury Charge on Lesser Included Offense*

Petitioner further contends that trial counsel was ineffective by his failure to request a jury charge on the lesser included offense of passion/provocation manslaughter.  (Pet. Add. II §§ E(g), E(e), ¶ 19).  As discussed above, this claim was raised on direct appeal and was found to be entirely meritless.  The state courts were correct in finding that this claim was procedurally barred, or in the alternative, wholly lacking in merit.  Trial counsel's failure to seek a jury charge on the lesser included offense cannot be deemed deficient where there was no evidence at trial that would

support the elements of the offense.  Thus, Petitioner has failed to demonstrate either prong of the *Strickland* test, deficient performance or prejudice, and is not entitled to habeas relief on this claim.

### 6.  Prejudicial Remarks by Trial Counsel

Petitioner next argues that his trial counsel was ineffective because he made prejudicial remarks in the opening statement that weakened Petitioner's defense.  (Pet. Add. II § E(f)).  Specifically, trial counsel referred to Petitioner as being housed at the Essex County Jail, which would invite the prejudicial inference that Petitioner "is already incarcerated."  (*Id.*).

The PCR Court found, however, that trial counsel provided effective assistance and that his decisions were tactical in nature.  (Ra27 at 10).  In particular, on PCR appeal, the Appellate Division rejected Petitioner's claim regarding counsel's opening reference to Petitioner's 18-month incarceration, as follows:

> Nor do we believe that defense counsel's reference to the fact that defendant sat in jail for eighteen months raises an issue worthy of PCR.  The reference was made in the context of defense counsel's attempt to emphasize the point that defendant was available to participate in a lineup, had the prosecution sought such a procedure.  This was clearly trial strategy presumably weighed against the likelihood that since defendant was charged with murder, the jurors probably suspected that defendant was being confined but would not necessarily know the ease with which a Wade hearing could have been arranged.  We find no basis to question this strategy.  We are reminded that the adversarial process should not be undermined by placing too much emphasis on hindsight.

(Ra30 at 9).

As discussed, decisions as to trial strategy are virtually unassailable.  *See supra* §IV(E)(4); *Strickland*, 466 U.S. at 689-91.  Further, this Court concludes that trial counsel's remarks were calculated and were strategically designed to create a reasonable doubt in the jurors' minds as to the State's case against Petitioner.  Petitioner again has not demonstrated that trial counsel's

remarks constituted deficient performance, nor has he shown that the state courts' ruling, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999).  Therefore, Petitioner is not entitled to habeas relief on these grounds.

### 7.  Waiver of Petitioner's Right to Testify at Trial

In Ground X of his petition, Petitioner contends that his trial counsel wrongfully waived Petitioner's right to testify at trial.  (Pet. Add. II § J).  Petitioner claims that he clearly asserted to trial counsel that he "wished to testify on his own behalf and advised trial counsel of this several times throughout his trial."  (*Id.* ¶ 1).  Petitioner further alleges that counsel "never told him he had the right to overrule his attorney's determination that he should not testify."  (*Id.* ¶ 2).  Petitioner argues that he believed it was crucial that he testify because the witnesses were afraid of the real perpetrator but defense counsel "strongly advised [him] not to testify."  (*Id.* ¶¶ 5-8).  Petitioner further alleges that the trial court did not conduct a colloquy with Petitioner to determine if Petitioner "understood his right to testify or remain silent."  (*Id.* ¶ 9).

The State counters Petitioner's claim by pointing to the trial record, which shows that defense counsel deliberated the tactical decision to have Petitioner testify at trial.  For instance, as the State's case was concluding, defense counsel informed the trial court that he had yet to decide whether Petitioner would testify.  (Ra10 at 220:20-21).  The next day at trial, counsel rested, and the trial court conducted a colloquy with defense counsel that suggests counsel and Petitioner had discussed and decided against Petitioner testifying.  (Ra11 at 10:16-13:8).  Finally, during the charge conference, defense counsel asked the court to read the charge regarding Petitioner's right not to testify, and Petitioner himself affirmed on the record that he wanted the court to read the

jury charge concerning his election not to testify.  (Ra12 at 2:14-3:10).

The trial record plainly suggests that Petitioner was informed of his right to testify and decided to waive it.  Petitioner's waiver is specifically evidenced by his assent to the jury charge concerning his election not to testify.  Petitioner now argues that he wanted to testify because he had no other alternative but to do so because the other witnesses were afraid of the real culprit.  (Pet. § J. Ground Ten, ¶¶ 6-8).  Regardless of Petitioner's argument that he felt it necessary to testify, he has provided no evidence that would suggest he was prejudiced by his attorney's alleged conduct in declining to put Petitioner on the stand.  Petitioner states only that he would have testified on his own behalf if he had been allowed to do so; however, this assertion does not specify what, if anything, Petitioner's testimony would have added.  The State correctly points out that there were numerous witnesses who positively identified Petitioner, and that his testimony, when weighed against that of the other witnesses, most likely would not have changed the outcome of trial.  Thus, Petitioner has not demonstrated either prong under *Strickland*, deficient performance by counsel or prejudice, and his claim on this ground is denied for lack of merit.

### 8. *Failure to Investigate and Prepare a Defense*

Finally, Petitioner makes a broad claim that his trial counsel was constitutionally ineffective in his investigation and preparation of a defense on Petitioner's behalf.  (Pet. Add. II § E(e)).  In addition to the grounds discussed above, Petitioner asserts that counsel "was not as well prepared, aggressive, informed or well versed in the nuances of this case."  (*Id.* ¶ 1).  Petitioner argues that counsel's lack of preparation and proper investigation was evidenced by counsel's failure to investigate identification witnesses' ulterior motives and inconsistencies in the witnesses' testimony.  (*Id.* ¶¶ 4-8).  He also contends that counsel did not investigate fully the

circumstances surrounding the "sloppy and haphazard" police investigation, including the arrest warrant that was issued and subsequently retracted for Maurice Rhock, (*id.* ¶ 12), and the alleged police mishandling of evidence from the scene of the crime, including the missing beer bottle and blood stains on the street. (*Id.* ¶ 11).

For the reasons stated previously, this Court does not find that counsel was deficient in his preparation of a defense on Petitioner's behalf. Issues concerning identification were addressed vigorously by counsel both on cross-examination and in summation. Petitioner has provided no factual basis, or even conjecture, to support his claim that further investigation was necessary, nor has he demonstrated that it would have benefitted his defense. "[C]ounsel has a duty to make [only] reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691 (defendant must "prov[e] that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy"); *see also Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *accord Lewis v. Mazurkiewicz*, 915 F.2d 106 (3d Cir. 1990) (expressly adopting *Strickland* and *Kimmelman* rationale for the purposes of failure-to-investigate analysis); *Echols v. Ricci*, No. 09-5548, 2011 WL 3678821 (D.N.J. Aug. 19, 2011).

Petitioner has not shown by any competent evidence that his counsel did not conduct a proper investigation into his defense such that it undermines the jury verdict. Therefore, this Court concludes that the determinations of the state PCR trial and appellate courts that counsel was not constitutionally ineffective were neither contrary to, nor involved an unreasonable application of, clearly established federal law under *Strickland*, nor did they result in decisions that were based on unreasonable determinations of the facts in light of the evidence presented in the state court

proceeding. *See Williams*, 529 U.S. at 413. Therefore, federal habeas relief is denied as to this ineffective assistance of counsel claim as substantively meritless.

### 9. Ineffective Assistance of Appellate Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a state defendant the effective assistance of counsel on a first direct appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387 (1985). The *Strickland* test for effective assistance of counsel also applies to the performance of appellate counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). When the issue is appellate counsel's failure to raise specific issues, a petitioner satisfies the first *Strickland* prong by showing that appellate counsel was "objectively unreasonable . . . [i.e.,] that counsel unreasonably failed to discover [arguably] non-frivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citations omitted). An arguably non-frivolous issue is "one that counsel [can] argue in good faith with some potential for prevailing." *Id.* (internal quotation marks and citations omitted). Consequently, the general principle established by *Smith* is that appellate counsel need not raise every non-frivolous issue on appeal; he "may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 288; *see also Jones v. Barnes*, 463 U.S. 745, 750 (1983) (rejecting "per se rule that appellate counsel must raise every non-frivolous issue"). In order to prevail on a claim that appellate counsel was ineffective a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising, or failing to raise, the arguments on appeal, that the conviction would have been reversed on appeal. *See Buehl v. Vaughn*, 166 F.3d 163, 173-74 (3d Cir. 1999).

Defense counsel further "has a constitutionally imposed duty to consult with [a] defendant

45

about whether to appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (citations omitted). "The term 'consult' convey[s] a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478; *see also Buehl*, 166 F.3d at 172 (rejecting state petitioner's § 2254 argument that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance) (footnote omitted).

Petitioner broadly asserts that his appellate counsel failed to adequately examine, raise and argue pertinent issues on direct appeal, (Pet. Add. II § E(e-1), ¶ 1), and alleges that appellate counsel did not communicate with him in preparation for his appeal. *(Id.* ¶ 3). In particular, Petitioner contends that his appellate counsel failed to raise issues concerning his trial counsel's ineffectiveness. (*Id.* ¶¶ 2(a)-(e)).

This Court has reviewed the state court record and factual findings, and concludes that there is no merit to Petitioner's claim of ineffective assistance of appellate counsel. Appellate counsel prepared a comprehensive brief on behalf of Petitioner as to the key issues advanced here by Petitioner. Moreover, Petitioner has not shown that his appellate counsel "ignored issues that were clearly stronger than those presented." *Robbins,* 528 U.S. at 288. Petitioner's allegation that appellate counsel erred by omitting claims of ineffective assistance of trial counsel is misplaced, as these claims are properly raised on collateral or post-conviction review, not on direct appeal. *See Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *United States v. Thornton*, 327 F.3d 268, 272 (3d

Cir. 2003).  Furthermore, as discussed above, Petitioner has not demonstrated any merit to his claims of ineffective assistance of trial counsel.  *See supra* § 4(E), ¶¶ 1-8.  Appellate counsel need not raise non-meritorious claims that have no reasonable probability of reversing Petitioner's conviction on appeal.  *See Buehl*, 166 F.3d at 173-74.  Therefore, Petitioner's ineffective assistance of appellate counsel claim is denied for lack of merit because Petitioner has demonstrated neither deficient performance nor resulting prejudice.

### 10.  PCR Court's Denial of Ineffective Counsel Claims

In Grounds Eight through Thirteen, Petitioner argues that the trial PCR court erred in its determinations that an evidentiary hearing was not necessary and that trial and appellate counsel did not provide ineffective assistance of counsel.  Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *See, e.g.*, *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.").  Thus, Petitioner has no federal right to an evidentiary hearing or other relief denied by a state PCR court.  *Id.*  Finally, this Court concludes that the determinations of the state PCR and appellate courts in finding no constitutionally ineffectiveness of counsel resulted in decisions that were neither contrary to, nor involved unreasonable applications of clearly established federal law under *Strickland*, nor were they based on unreasonable determinations of the facts in light of the evidence presented in the state court proceeding.  *Williams*, 529 U.S. at 413.  As Petitioner has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in outcomes that

cannot be reasonably justified, his claim for federal habeas relief is denied in full for lack of substantive merit.

## VI.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See 3d Cir. Local App.R. 22.2.  The Court may issue a certificate of appealability "only if the [petitioner] has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VII.  CONCLUSION

For the above reasons, this Court denies in full Petitioner's § 2254 habeas petition, and a certificate of appealability will not issue.   An appropriate Order follows.


*s/Esther Salas*
**Esther Salas, U.S.D.J.**